# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

In Re:

BSML, INC.,

       Debtor(s).
_____/

CASE NO.: 10-19119-BKC-PGH
Chapter 11

**EXPEDITED MOTION TO COMPROMISE CONTROVERSY AND APPROVE SETTLEMENT BETWEEN TRUSTEE MICHAEL BAKST AND DISCUS DENTAL, LLC AND MOTION TO SHORTEN NOTICE IN RESPECT THEREOF**

**EXPEDITED HEARING RESPECTFULLY REQUESTED ON NOVEMBER 30, 2010 AT 1:00 P.M WITH OTHER PENDING CRITICAL MOTIONS ALREADY SCHEDULED AT SUCH TIME**

Michael R. Bakst (the "Trustee"), as the chapter 11 trustee for BSML, Inc. ("Debtor"), through undersigned counsel and pursuant to Federal Rules of Bankruptcy Procedure 2002, 9014, and 9019(a), files this Motion (the "Motion") to Compromise Controversy and Approve Settlement Between the Trustee and Discus Dental, LLC ("Discus") and in support hereof states as follows:

### Jurisdiction

1.     This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). The principal predicate for the relief requested herein is Federal Rule of Bankruptcy Procedure 9019(a).

### Background

**A.**     **Debtor's Business and Bankruptcy Filing**

RM:7712162:1

MIAMI 2347765.3 7910833756

2. Debtor is a corporation organized and existing under the laws of the State of Utah. Pre-petition, Debtor operated spa clinics nationwide which provided teeth-whitening services and the sale of related products on-line and on television. Prior to the appointment of the Trustee, Debtor's headquarters were located in Boca Raton, Florida. Debtor owns personal property described in its Schedule "B", some of which has been returned to secured creditors during its bankruptcy and some of which has been abandoned by the Trustee. The remaining equipment and inventory are with landlords pending an order from the Court.

3. On April 8, 2010 (the "Petition Date"), an involuntary Chapter 7 petition was filed against Debtor [ECF No. 1], and on May 3, 2010, an Order for relief was entered as part of an Order Granting the Debtor's Motion to Convert Case to Chapter 11 [ECF No. 33]. On August 19, 2010, the Court appointed Michael R. Bakst as Trustee of Debtor [ECF No. 258].

4. No statutory committee has been appointed in this case.

B. **Post Petition Activities**

5. Debtor and the Trustee have each sought post-petition financing from the petitioning creditors and active secured creditors, but none has been offered.

6. Many of Debtor's landlords have obtained relief from the automatic stay in this case and are in various stages of eviction of Debtor's spas nationwide. Another group, Pinnacle, purports to have taken over operations of various other locations that it contends it now owns. The validity of this purported transfer is in dispute. Other locations may be continuing to operate independently, but not with the permission of the Trustee or with his knowledge. Certain property at vacated locations has been shipped to Boca Raton and is being stored. Others are being stored at facilities near the prior location. Others are being held by the various landlords pending further instruction from the Trustee or the Court. At bottom, Debtor's business is no

longer operating. Spas may now be operating in Canada that may be owned by the Debtor, but the matter is in dispute and those spas insist that they are not owned by the Debtor.

### C. The License Agreement and Disputes with Discus

7. On December 29, 2005, Discus's predecessors in interest, as licensor, entered into a License Agreement (the "License Agreement") with the predecessor in interest to BSML, Inc., as licensee, which permitted the licensee to use certain trade and service marks and certain patented technology to sell tooth whitening products and services, generally known as "BriteSmile," in spas and retail trade channels. Discus is the current "Licensor" and the Debtor is the current "Licensee" under the License Agreement.

8. Prior to the commencement of this case, Discus alleged that Debtor engaged in numerous activities that were harmful to the BriteSmile brand and that violated the terms of the License Agreement. Discus sued Debtor in the United States District Court for the Central District of California seeking injunctive relief, and damages for breach of contract, unfair competition, and for infringement of the Britesmile trademarks (Case No. CV09-4403 GW) (the "California Action"). Debtor asserted counterclaims against Discus in the California Action. Both Discus and the Trustee dispute the merits of the other party's claims in the California Action, which remains pending and was stayed by the commencement of this bankruptcy case.

9. Shortly after the commencement of this case, Discus filed its Motion to Compel Debtor to Reject License Agreement [ECF No. 137] (the "License Agreement Motion"). In the License Agreement Motion, Discus asserted that the License Agreement must be rejected or had terminated by its terms because (a) it is not assumable or assignable pursuant to section 365(c)(1), (b) it cannot be assumed because Debtor cannot cure non-monetary defaults and cannot provide adequate assurance of future performance as required by sections 365(b)(1)(A)

and (C) of the Bankruptcy Code, and (c) the License Agreement had terminated by its terms as a result of Debtor's cessation of operations, its failure to continue to operate spa locations and/or to continue to market, promote, and sell Britesmile products in the retail channel. Prior to the appointment of the Trustee, Debtor also filed a Motion to Assume the License Agreement [ECF No. 219] (the "Assumption Motion") that encompasses the same issues as the License Agreement Motion.

10. Although this Court rejected Discus's argument in the License Agreement Motion based upon section 365(c)(1), the Court determined that an evidentiary hearing is required to adjudicate the remaining arguments set forth in the License Agreement Motion. [ECF No. 179]. Although the Trustee contests the merit of the arguments presented by Discus in the License Agreement Motion, it is evident that litigation will be costly and time consuming and, even if successful, may lead to a less favorable result for Debtor's estate than is achieved through the settlement proposed herein and the Transaction (as defined below). If Discus were unsuccessful in the License Agreement Motion, the issues raised in the California Action would then need to litigated as well.

### D. The Inventory and the Sale Transaction

11. Debtor's estate owns or is obligated for orders of pen tubes and other components that go into approximately 175,088 finished BriteSmile teeth-whitening pens (the "BSML Inventory") that are presently being held by Oraceutical, Inc. ("Oraceutical") in Massachusetts. The BSML Inventory consists almost solely of components used to make teeth whitening pens such as pen tubes, packaging, and other supplies. The BSML Inventory does not include any finished pens that are owned free and clear by the Debtor. Oraceutical is a supplier of Debtor and is currently owed $185,927.00 in connection with the Inventory.

12. As set forth in further detail in a separate motion filed contemporaneously herewith (the "Sale Motion"), the Trustee is seeking authority, with Discus's consent, to sell the BSML Inventory free and clear of liens, claims, and encumbrances (but not free and clear of Discus' intellectual property rights) to Oraceutical (the "Transaction"). Oraceutical will, in turn, finish all unfinished inventory and sell all of the existing inventory in the retail channel (the "Inventory") to end-users and remit twenty-five percent (25%) of the gross revenues from such sales of Inventory to the Debtor's estate.

13. As set forth above, Discus asserts that the License Agreement has terminated by its terms. Accordingly, Discus has also claimed that, even if the License Agreement would have otherwise permitted it, the Trustee may not (a) sell the Inventory to Oraceutical (or any other party); (b) sell the Inventory free and clear of Discus's intellectual property rights, or (c) authorize Oraceutical (or any other party) to resell the Inventory to end users.

14. Discus, however, has agreed to consent to the Transaction and to grant to Oraceutical a limited license to sell the Inventory to end users, conditioned upon full and final resolution of the disputes among Discus, the Trustee, and Debtor's estate. Oraceutical has indicated that it is unwilling to proceed with the Transaction absent the consent of Discus and a license from Discus to sell the Inventory to end users. Accordingly, Discus's consent is necessary for the consummation of the Transaction.

15. Although, as set forth in the Sale Motion, the Trustee has received offers other than the offer from Oraceutical that forms the basis of the Transaction, the Trustee, after careful analysis, has concluded that the Transaction is in the best interests of Debtor's estate and its creditors because it will provide a superior return to Debtor's estate and can be achieved without

protracted, risky, and expensive litigation with Discus. Discus will not consent to any other proposed sale motion.

16.  Accordingly, the Trustee and Discus have agreed to resolve their pending disputes and now seek approval of a settlement pursuant to the terms set forth below (the "Settlement").

(a)  At any time after the final and non-appealable approval of this Settlement by this Court ("Final Approval"), Discus shall consent to the Transaction providing for the sale of the Inventory to Oraceutical, free and clear of liens, claims, and encumbrances but not free and clear of Discus's intellectual property rights in such Inventory. Debtor's estate shall receive from Oraceutical (and not from Discus) twenty-five percent (25%) of the gross sales proceeds of the Inventory. Discus's consent is predicated upon Discus and Oraceutical entering into a new limited license agreement that will permit Oraceutical to sell the Inventory in the retail channel in accordance with the terms thereof.

(b)  Upon Final Approval, Discus shall pay (i) the Debtor's estate the sum of One Hundred Thousand Dollars ($100,000), and (ii) Oraceutical the sum of One Hundred Thousand Dollars ($100,000) (the "Payments"). Not later than 6 months after Final Approval, Oraceutical shall pay an additional $100,000 to the Debtor to effectuate the settlement with Discus from the proceeds of the Inventory sales. These payments are not receivables to the Debtor or proceeds from the sale of any of its assets.

(c)  Effective upon Final Approval and the receipt by Debtor's estate and Oraceutical of the Payments, the Trustee and the Debtor's estate each agree that the License Agreement shall be deemed terminated as of the Petition Date and shall be of no further effect. The Trustee, Debtor, and Debtor's estate shall immediately cease the use of all trademarks, patents, and any other rights licensed or otherwise granted to the Debtor pursuant to the License Agreement. For the avoidance of doubt, any sub-licenses, transfers, assignments, or other rights in the trademarks, patents, or other rights purportedly granted by the Debtor or otherwise obtained by any other entity under the auspices of the License Agreement with the Debtor, including without limitation, BSML Canada, Pinnacle, Pure Med Spa, any entity controlled by or affiliated with Jeffrey Nourse, or any affiliate of Debtor, shall be immediately revoked and deemed terminated.

(d)  Effective upon Final Approval and the receipt by the Debtor's estate and Oraceutical of the Payments, all of the Debtor's estate's right, title, and interest in and to 1-800-BriteSmile, www.britesmile.com, www.britesmile.co.uk, and all BriteSmile related trademarks and trademark applications (including but not limited to such trademarks and trademark applications containing "Brite" for use with dental products,

e.g., "Brite Veneers" ), and any patents for which Debtor's estate has a pre-existing bona fide obligation to assign to Discus, shall be assigned (or re-assigned, as applicable) to Discus and Debtor's estate shall have no further rights therein. The Trustee shall cause Debtor's estate to take all steps necessary to effectuate such assignments including the execution of any documents required by internet domain name registries, internet or telephone service providers or other similar entities or that may otherwise be reasonably requested by Discus.

(e) Effective upon Final Approval and the receipt by the Debtor's estate and Oraceutical of the Payments, the Trustee shall cause Debtor's estate to immediately deliver to Discus (at a location in the United States designated by Discus) all Britesmile Teeth-Whitening Lamps in its possession, custody, or control and identify where such lamps were located. The Debtor will do this at Discus' reasonable expense to the extent that the lamps were not already abandoned by the Trustee.

(f) Within ten (10) days of the last to occur of Final Approval and the receipt by the Debtor's estate and Oraceutical of the Payments, Discus shall (i) dismiss the California Action against the Debtor with prejudice, (ii) withdraw the License Agreement Motion, and (iii) withdraw its proof of claim filed in this case.

(g) Within ten (10) days of the last to occur of Final Approval and the receipt by the Debtor's estate and Oraceutical of the Payments, the Trustee shall, on behalf of Debtor, (i) withdraw the Assumption Motion, (ii) dismiss all counterclaims asserted by Debtor in the California Action with prejudice, (iii) be deemed to have waived and released any claims against Discus in any way related to the License Agreement whether or not raised in the California Action, except for claims arising from this Settlement.

17. The Trustee and Discus have agreed that the Settlement outlined above is in the best interests of Debtor's bankruptcy estate and its creditors and believe that approval is appropriate.

## RELIEF REQUESTED

18. Pursuant to this Motion, and in accordance with Federal Rule of Bankruptcy Procedure 9019(a), the Trustee respectfully requests that the Court enter an Order approving the Settlement, authorizing and directing the Trustee to consummate the Settlement, and shortening

the notice otherwise required pursuant to Federal Rule of Bankruptcy Procedure 2002(a) in respect of the hearing thereon.

19. A starting point in analyzing any proposed settlement agreement is the general policy of encouraging settlements and favoring compromises. *In re Bicoastal Corp.*, 164 B.R. 1009, 1016 (Bankr. M.D. Fla. 1993) (recognizing that the law favors compromise of disputes); *see also Myers v. Martin (In re Martin)*, 91 F.3d 389, 394 (3d Cir. 1996); *Florida Trailer and Equip. Co. v. Deal*, 284 F.2d 567, 571 (5th Cir. 1960). The standard by which courts evaluate a proposed compromise and settlement is well established. In bankruptcy, the court should approve a proposed compromise and settlement when it is fair and equitable and in the best interests of the debtor's estate and its creditors. *See In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998); *In re Louise's Inc.*, 211 B.R. 798, 801 (D. Del. 1997); *In re Texaco Inc.*, 84 B.R. 893, 901-02 (Bankr. S.D.N.Y. 1988); *Depo v. Chase Lincoln First Bank, N.A. (In re Depo)*, 77 B.R. 381, 383 (N.D.N.Y. 1987), *aff'd*, 863 F.2d 45 (2d Cir. 1988).

20. Approval of a settlement in bankruptcy proceedings is within the sound discretion of the court, and will not be disturbed or modified on appeal absent a showing of abuse of discretion. *In re Arrow Air, Inc.*, 85 B.R. 886, 890-91 (Bankr. S.D. Fla. 1988); *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602-03 (5th Cir. 1980).

21. Under the well-established standard for consideration of the merits of a settlement, a settlement should be approved unless it "falls below the lowest point in the range of reasonableness." *In re Bicoastal Corp.*, 164 B.R. at 1016 (quoting *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972))); *In re Arrow Air, Inc.*, 85 B.R. at 891.

22. In determining whether a settlement is within the range of reasonableness, the Court should consider four principal factors: (a) the probability of success in the litigation; (b) difficulties to be encountered in collection; (c) the complexity of the litigation and related expense and inconvenience; and (d) the interests of the creditors. *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544, 1549 (11th Cir. 1990); *In re Bicoastal Corp.*, 164 B.R. at 1016; *In re Arrow Air, Inc.*, 85 B.R. at 891; *see also In re Marvel Entm't Group, Inc.*, 222 B.R. at 249; *see also Aetna Cas. & Sur. Co. v. Jasmine, Ltd. (In re Jasmine, Ltd.)*, 258 B.R. 119, 123 (D.N.J. 2000); *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Martin v. Kane (In re A&C Properties)*, 784 F.2d 1377, 1381 (9th Cir. 1986). These factors seek to balance the probable benefit and potential cost of pursuing a claim or defense against the costs of the proposed settlement.

### A. Probability of Success in Litigation

23. As described above, Discus and the Trustee are in substantial disagreement as to the status and existence of the Debtor's estate's rights in the License Agreement. Although Discus asserts that Debtor has ceased operations thereby terminating the License Agreement, the Trustee contends that operations may be ongoing outside Debtor's or the Trustee's control, that a cessation of operations may be cured pursuant to section 365 of the Bankruptcy Code, that spas may be operating in Canada that are owned by the Debtor, and, alternatively, that the license to sell product in the retail channel does not terminate as a result of a cessation of spa operations.

24. The Trustee recognizes, however, that Discus's arguments as set forth in the License Agreement Motion are colorable and present a material risk that Discus will prevail were the License Agreement Motion adjudicated. If Discus were to prevail, the Inventory will be rendered unsaleable and will be worthless to Debtor's estate and to Oraceutical.

25. Moreover, the Transaction proposed in the Sale Motion is not viable without the consent of Discus and the execution of a new license agreement between Discus and Oraceutical. Oraceutical will not proceed with the Transaction if it involves buying into contentious litigation or it is not assured a license to be able to sell the Inventory that it purchases. Although, as set forth in the Sale Motion, the Trustee has received other offers that would require Debtor's estate to assume and assign the License Agreement, the Trustee would have difficulty demonstrating adequate assurance of future performance with respect to the insiders who are proposing these offers and, even if this problem could be overcome, these other offers are not more lucrative than the Transaction. It is therefore unclear to the Trustee that prevailing in litigation with Discus would ultimately prove to be a successful outcome.

26. On the other hand, the Settlement proposed herein is a win-win for the Trustee, Debtor's estate, Discus, and Oraceutical The Trustee is able to capitalize on the Transaction with Oraceutical that is the most likely to close and that delivers the highest return to Debtor's estate of the offers received by the Trustee. The Settlement also assures that the Trustee will be able to monetize the Inventory and that Oraceutical will be licensed to resell it, while avoiding the substantial risks associated with litigation. Oraceutical is also able to monetize its inventory that it otherwise could not.

27. Finally, the Settlement involves the dismissal of the California Action against Debtor and the counterclaims asserted by Debtor against Discus therein. The California Action, if pursued, would be expensive, scorched-earth warfare that could take many years. Debtor's estate may not have sufficient resources to fund this type of litigation and Debtor's counterclaims may not prove successful. Moreover, is unlikely that Debtor's estate could pursue the California Action and be in a position to sell the Inventory while it still has value. Accordingly, the Trustee

submits that the Settlement is a reasonable compromise in light of the low probability of achieving a truly successful result through litigation that results in a greater return to Debtor's estate and its creditors than can be achieved through the Transaction and the Settlement.

### B. Difficulties in Collection

28. The Trustee submits that this factor is not of significant relevance to the evaluation of the Settlement. Except for Debtor's counterclaims in the California Action, the disputes between Discus and Debtor's estate do not involve the collection of money from Discus or any other party.

### C. Complexity of the Issues and Attendant Expense and Delay

29. The issues implicated by the License Agreement Motion and the California Action are complicated issues, many of which deal with intellectual property law. The License Agreement is of significant importance to Discus and Discus is therefore likely to litigate every issue and engage in significant and costly discovery resulting in cost and delay. Regardless of the outcome, it is likely that protracted appeals would ensue.

30. As set forth above, this estate is without a source of cash and may lack the resources necessary to engage in protracted litigation. Instead, the Trustee is in a position to capitalize on the holiday sales season, sell the Inventory while it is still viable and has value, and avoid all of the costs and risks of litigating with Discus. Both cost and the decreasing value of the Inventory associated with delay indicate that this factor strongly militates in favor of approval of the Settlement.

### D. Paramount Interest of Creditors and Deference to Their Reasonable Views

31. Although there is no unsecured creditors committee in this case, the Trustee has a fiduciary duty to act in the best interests of Debtor's creditors and believes that this Settlement is

in their best interests. As stated above, there is simply no assurance that any other viable transaction will materialize that will provide a better return to the Debtor's estate and its creditor. There is, however, a material risk that Discus prevails on the License Agreement Motion rendering the Inventory worthless and virtually guaranteeing that unsecured creditors receive no return whatsoever.

32. Approval of the Settlement by creditors is sensible because the terms of the Settlement provide both immediate and ongoing value to Debtor's estate. By providing for the unrestricted Payment from Discus and the additional subsequent sum of $100,000 from Oraceutical, the Settlement generates substantial immediate value to the Debtors' estate to allow it to repay priority and unsecured creditors and provides Oraceutical with the funds necessary to enable it to resell the Inventory. Over a longer time horizon, the Settlement provides the Debtor's estate with an additional 25% of the gross sales revenues achieved by Oraceutical that can pay one or more secured creditors with a surcharge to the estate. Accordingly, because the Settlement clearly provides substantial value to the Debtors' estate, the Trustee submits that this factor strongly supports approval of the Stipulation.

### E. Conclusion

33. In conclusion, the Trustee respectfully suggests for the reasons set forth above that each of the standards established by *In re Justice Oaks II, Ltd.* has been satisfied, that the terms of the Settlement fall well within the range of reasonableness, and that the approval of the Settlement is the best interests of the Debtors' estate.

### REQUEST TO SHORTEN NOTICE

The Trustee respectfully requests that this Court hear this Motion and consider the Settlement on shortened notice. Although Federal Rule of Bankruptcy Procedure 2002(a)(3)

normally requires 21 days' notice by mail of a motion seeking approval of a Settlement, the rule permits modification of this requirement for cause. Here, approval of the Settlement is a condition precedent to the Transaction set forth in the Sale Motion and should be considered at the same hearing. An expedited hearing in respect of the Sale Motion and this Motion will enable the Transaction to close promptly allowing sales of Inventory to take place during the critical holiday season and before additional Inventory expires and becomes worthless, or costly to make sellable. Debtor's estate and its creditors have a vested interest in enabling Oraceutical to maximize the sales price of the Inventory thereby increasing the return to Debtor's estate. The Trustee submits that, under the circumstances, the notice afforded to creditors in connection with a hearing on November 30, 2010 at 1:00 p.m. is adequate and will provide creditors with an opportunity to object to approval of the Settlement. Accordingly, the Trustee submits that cause exists to shorten notice of the hearing on the Motion and requests that the Court approve the form and manner of notice provided.

WHEREFORE, the Trustee respectfully requests that the Court enter an Order: (i) granting this Motion; (ii) approving the Settlement pursuant to Federal Rule of Bankruptcy Procedure 9019; (iii) authorizing and directing the Trustee, the Debtor's estate, and Discus to take any and all necessary actions to effectuate the terms of the Stipulation in a timely and expedited manner; (iv) approving shortened notice of the hearing on the Motion and Settlement, and (v) granting such other and further relief as this Court deems just and proper.

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida, and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by regular U.S. Mail and Electronic Mail to all parties as indicated on the attached service list on this the 19th day of November, 2010.

                MICHAEL R. BAKST, TRUSTEE

                */s/ Michael R. Bakst*
                MICHAEL R. BAKST
                PMB 702, 222 Lakeview Avenue
                Suite 160
                West Palm Beach FL 33401
                Telephone:   (561) 838-4539
                Facsimile:    (561) 514-3439

**Electronic Mail Notice List**

The following is the list of **parties** who are currently on the list to receive e-mail notice/service for this case.

- Michael R Bakst   efilemrb@ruden.com, FL65@ecfcbis.com;Efile2557@ruden.com;Efile2556@ruden.com;Efile2554@ruden.com

- Michael R. Bakst   efile2565@ruden.com, efile2558@ruden.com;FL65@ecfcbis.com

- Becket and Lee LLP   notices@becket-lee.com

- Aric S Bomsztyk   asb@bmatlaw.com

- John D. Eaton   jeaton@bergersingerman.com, efile@bergersingerman.com;byglesia@bergersingerman.com;skey@bergersingerman.com

- Heidi A Feinman   Heidi.A.Feinman@usdoj.gov

- G Steven Fender   steven.fender@ruden.com, efile2565@ruden.com

- Joey M Grant   grant@padulagrant.com

- Craig I Kelley   cik@kelleylawoffice.com, ecf@kelleylawoffice.com,grace@kelleylawoffice.com,kelleyecfsouthern@gmail.com,

- Tarek K Kiem   rappaport@kennethrappaportlawoffice.com, tarek@rorlawfirm.com

- Gerard M Kouri Jr.   gmkouripa@bellsouth.net, gmkouripaecf@gmail.com

- David B Marks   brett.marks@akerman.com, charlene.cerda@akerman.com

- Ilan Markus   ilan.markus@leclairryan.com
- Paul J McMahon   pjm@pjmlawmiami.com
- David L Merrill   dlmerrill@sbwlawfirm.com, igarcia@sbwlawfirm.com;lwood@sbwlawfirm.com;awernick@sbwlawfirm.com
- Office of the US Trustee   USTPRegion21.MM.ECF@usdoj.gov
- Chad S Paiva   chad.paiva@gmlaw.com, katrina.bankert@gmlaw.com
- Kristen N Pate   ggpbk@ggp.com
- Ivan J Reich   ireich@gray-robinson.com, andrea.brodsky@gray-robinson.com
- Eric A Rosen   erosen@rosenwinig.com, sperini@rosenwinig.com
- Jay Sakalo   jsakalo@bilzin.com, eservice@bilzin.com;lflores@bilzin.com;abeck@bilzin.com
- Bradley S Shraiberg   bshraiberg@sfl-pa.com, lmelton@sfl-pa.com;lrosetto@sfl-pa.com;blee@sfl-pa.com
- Jeffrey I. Snyder   jsnyder@bilzin.com, eservice@bilzin.com;lflores@bilzin.com;abeck@bilzin.com
- Laurie A. Thompson   lauriethompson@comcast.net
- Ronald M Tucker   rtucker@simon.com, psummers@simon.com;cmartin@simon.com;rwoodruff@simon.com;lgrafton@simon.com
- Dean C Waldt   waldtd@ballardspahr.com, direnzop@ballardspahr.com;pollack@ballardspahr.com
- Aaron A Wernick   awernick@sbwlawfirm.com, igarcia@sbwlawfirm.com;lwood@sbwlawfirm.com

**Manual Notice List**

Mark Alexander
5080 Spectrum Drive
Suite 850E
Addison, TX 75001

Aric S Bomsztyk
1422 Bellevue Ave
Seattle, WA 98122

Shelly Buchanan
11046 SW Greenburg Rd # 334

Tigard, OR 97223

Elizabeth Gardner
2555 Prestwick Ave
Concord, CA 94519

Tere L Guerrero
,

Germaine F. Gulan
5076 Joseph Lane
San Jose, CA 95118

Robert A Klyman
355 South Grand Ave
Los Angeles, CA 90017

Robert A. Klyman
355 S Grand Ave.
Los Angeles, CA 90071

Russell W. Lee
POB 70550
Oakland, CA 94612

Steven R Lefkofsky
31500 Northwestern Hwy #105
Farmington Hills, MI 48334

Omnicare Consulting Medical Group
c/o Mitchell Green
1101 Fifth Ave #310
San Rafael, CA 94901

Oregon Bureau Of Labor and Industries
1400 Executive Parkway
#200
Eugene, OR 97401

Sarah A Williams
16251 SW Becky Lange Ct
Tigard, OR 97223

All creditors on the Master Mailing List